UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | | |
|---|---|---|---|
| BETTY S. FLYTHE, | : | | |
| | : | | |
| Plaintiff, | : | Civil Action No.: | 10-2021 (RC) |
| | : | | |
| v. | : | Re Document No.: | 76, 77 |
| | : | | |
| DISTRICT OF COLUMBIA, *et al.*, | : | | |
| | : | | |
| Defendants. | : | | |

## <u>MEMORANDUM OPINION & ORDER</u>

### DENYING PLAINTIFF'S MOTION TO ALTER OR AMEND JUDGMENT

### I. INTRODUCTION

On December 26, 2009, Tremayne G. Flythe was fatally shot by an officer of the District of Columbia's Metropolitan Police Department ("MPD"). Mr. Flythe's mother, Betty S. Flythe, brought this action in her personal capacity and on behalf of the estate of Mr. Flythe against the District of Columbia ("the District") and the two officers directly involved in the shooting, Officers Travis Eagan and Angel Vazquez. The plaintiff brought 42 U.S.C. § 1983 claims against the defendant officers, as well as common law claims for assault and battery. In addition, the plaintiff asserted assault and battery, and negligent hiring, training, and supervision claims against the District, as employer of the individual officers. The defendants moved for summary judgment on all claims, and on November 8, 2013, the Court granted that motion in part and denied it in part. *See* ECF Nos. 71 & 72.

### II. FACTUAL & PROCEDURAL BACKGROUND

The facts of this case are stated in full in the Court's Memorandum Opinion, *see* Memorandum Opinion at 2–8, ECF No. 72, but some background is useful. On December 26,

2009, Tremayne G. Flythe was fatally shot by a former officer of the MPD, Travis Eagan. The shooting involved Officers Eagan and Vazquez, who both pursued Mr. Flythe after Balbir Hundal reported that a man had thrown a rock through his liquor store window. Though Officer Eagan fired the fatal shot, both officers testified that they shot at Mr. Flythe because he threatened them both, in their separate encounters with him, with a knife.

The Court found that Mr. Flythe had not been seized by Officer Vazquez for purposes of his excessive force claim against him, and that he had been seized by Officer Eagan, but that Officer Eagan was entitled to qualified immunity because he was objectively reasonable in using deadly force against Mr. Flythe. The Court also found that because the plaintiff failed to proffer expert testimony, her negligent supervision claim against the District failed.

The Court found, however, that based on the eyewitness testimony proffered by the plaintiff, there was a genuine issue of material fact as to whether Mr. Flythe was armed during his encounter with Officer Vazquez;[1] as such, summary judgment was not appropriate on the plaintiff's assault claim against him. The Court also found that because there was a genuine issue of material fact as to Officer Vazquez's recitation of events, that genuine issue carried forward to Officer Eagan's encounter with Mr. Flythe, and the District, as *both officers'* employer, could still be liable for assault and battery under a theory of respondeat superior. As such, the claims that survived summary judgment were the assault claim against Officer Vazquez, and the assault and battery claim against the District. The plaintiff brings this motion to alter or amend the Court's interlocutory decision. *See* ECF Nos. 76 & 77. For the reasons that follow, the Court will deny that motion.

---

[1] The Court entered judgment for Officer Eagan on the battery claim, because the plaintiff could not proffer facts that put *his* recitation of events into material dispute.

## III. ANALYSIS

### A. Legal Standard

The plaintiff does not identify under what rule she brings her Motion to Alter or Amend.[2] The defendants surmise that Federal Rules of Civil Procedure 50(e) or 60(b) apply. *See* Def.'s Opp'n Mot. 2, ECF No. 79. However, it is Rule 54(b) that governs, because the Court's entry of judgment is not a final judgment disposing of all the issues in this case. Federal Rule of Civil Procedure 54(b) provides that "any order or other decision . . . that adjudicates fewer than all the claims or the rights and liabilities" of the parties that does not end the case "may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities." FED. R. CIV. P. 54(b). "The Court has broad discretion to hear a motion for reconsideration brought under Rule 54(b)." *Isse v. Am. Univ.*, 544 F. Supp. 2d 25, 29 (D.D.C. 2008). The district court's discretion is "limited by the law of the case doctrine and subject to the caveat that where litigants have once battled for the court's decision, they should neither be required, nor without good reason permitted, to battle for it again." *Singh v. George Washington Univ.*, 383 F. Supp. 2d 99, 101 (D.D.C. 2009) (citation omitted). Though different courts "apply a variety of different standards when confronted with a motion for reconsideration," *see Cobell v. Norton*, 355 F. Supp. 2d 531, 539 (D.D.C. 2005), this jurisdiction has established that reconsideration is appropriate "as justice requires." *Id.* at 540; *see also Capitol Sprinkler Inspection, Inc. v. Guest Services, Inc.*, 630 F.3d 217, 227 (D.C. Cir. 2011) (explaining that Rule 54(b) recognizes a district court's power to reconsider an interlocutory order "as justice requires" (citation omitted)). "Considerations a court may take into account under the 'as justice requires'

---

[2] The plaintiff cites to Federal Rule of Civil Procedure 56(f) for the proposition that the Court, *sua sponte*, decided issues on grounds not raised by the parties, independent of the motion for summary judgment. The Court discusses that standard, *infra*, at n.4.

standard include whether the court 'patently' misunderstood the parties, made a decision beyond the adversarial issues presented, made an error in failing to consider controlling decisions or data, or whether a controlling or significant change in the law has occurred." *Williams v. Johanns*, 555 F. Supp. 2d 162, 164 (D.D.C. 2008) (citing *Singh*, 383 F. Supp. 2d at 101). In general, "a court will grant a motion for reconsideration of an interlocutory order only when the movant demonstrates: (1) an intervening change in the law; (2) the discovery of new evidence not previously available; or (3) a clear error in the first order." *Stewart v. Panetta*, 826 F. Supp. 2d 176, 177 (D.D.C. 2011) (quoting *Zeigler v. Potter*, 555 F. Supp. 2d 126, 129 (D.D.C. 2008)). "The party seeking reconsideration bears the burden of proving that some harm would accompany a denial of the motion to reconsider . . . [and] that some sort of injustice will result if reconsideration is refused." *Isse*, 544 F. Supp. 2d at 29. A court may deny a motion for reconsideration that "raises . . . arguments for reconsideration that court has . . . already rejected on the merits." *Henok v. Chase Home Finance, LLC*, 947 F. Supp. 2d 6, 10 (D.D.C. 2013).

\* \* \*

The plaintiff asks this Court to alter or amend its judgment with respect to (1) the negligent supervision claim, (2) the unlawful seizure claim as to Officer Vazquez, (3) the excessive force claim as to Officer Eagan, and (4) the assault and battery claim as to Officer Eagan. The Court addresses each of these arguments in turn.

### B. Negligent Supervision Claim[3]

The plaintiff first argues that the Court erred in requiring expert testimony for the plaintiff's negligent supervision claim to survive summary judgment. Contrary to the plaintiff's

---

[3] The Court treats the negligent hiring and training claim the same as it treats the negligent supervision claim.

assertion, this Court did not find as a matter of law that expert testimony is required in all negligent supervision cases. It stated, true to District of Columbia law, that the decision of whether to require expert testimony on a particular claim varies by case, and is left to the sound discretion of the district court. *See Varner v. District of Columbia*, 891 A.2d 260, 266 (D.C. 2006) (citing *District of Columbia v. White*, 442 A.2d 159, 165 (D.C. 1982)). In its sound discretion, the Court found that in this case, expert testimony was needed to establish the standard of care because without it, there was no way to know whether restoring Officer Eagan to duty based on a psychological evaluation, as opposed to a clinical evaluation, fell short of the standard of care. A reasonable juror would need to know what the District should have done— what standard it should have met—in order to determine whether or not the District fell below that standard. Because no expert testimony was proffered, the Court entered judgment for the defendants on this issue.[4]

---

[4] The plaintiff argues that the Court committed error under Federal Rule of Civil Procedure 56(f) by entering a judgment independent of the motion, because the defendant never raised the failure to proffer expert testimony as an argument in its motion for summary judgment, and therefore the plaintiff was not on notice that it had to put forth such testimony. *See* Pl.'s Mot. Alter or Amend 4, ECF No. 77. While the Court considered *an element* of the negligent supervision claim not raised by the parties, it did not decide the case on grounds independent of that claim generally. Both parties briefed, and therefore were on notice of the negligent supervision claim as a basis for judgment. In situations where courts have found that the district court erred in granting summary judgment *sua sponte*, it was because the court entered judgment on a legal claim that was not even before it, and therefore completely beyond the scope of the motion itself. *See Moton v. Cowart*, 631 F.3d 1337, 1343 (11th Cir. 2011) (reversing the district court's entry of judgment for the defendant on the issue of compensatory damages when the motion for summary judgment never raised the issue of damages in the first place); *Legge v. Wagner*, 7 F.3d 234, at *3 (6th Cir. 1993) (finding that the district court's granting of summary judgment on failure to plead fraud grounds was prejudicial to the plaintiffs because "defendants' motion for summary judgment was based solely on the argument that the Wagners could not be held individually liable under RICO, [and] the district court did not even mention this argument in its opinion. Instead, the district court based its decision to grant summary judgment on its determination that plaintiffs failed to plead the fraud, upon which they based their RICO claims, with the particularity required by Federal Rule of Civil Procedure 9(b)") (per curiam).

In its motion to alter or amend, the plaintiff includes, for the first time, expert testimony as to the standard of care for the supervision of an officer. The plaintiff includes the expert report of Timothy Longo, the Chief of Police of Charlottesville, Virginia. *See* ECF No. 77-1. The District of Columbia Court of Appeals has explained that in order to be sufficient, "the expert must clearly articulate and reference a standard of care by which the defendant's actions can be measured. Thus the expert must clearly relate the standard of care to the practices in fact generally followed by other comparable facilities or to some standard nationally recognized by such units." *Briggs v Wash. Metro. Area Trans. Auth.*, 481 F.3d 839, 846 (D.C. Cir. 2007) (quoting *Clark v. District of Columbia*, 708 A.2d 632, 635 (D.C. 1997)). *See also Butera v. District of Columbia*, 235 F.3d 637, 660 (D.C. Cir. 2001) (explaining that expert sufficiently established a standard of care for undercover police operations because he "set forth concrete bases for his expert testimony," including consulting with a neighboring jurisdiction's police force, reviewing MPD's General Orders, examining a Department of Justice handbook on drug investigations, and examining a training manual from the Institute of Police Technology and Management of the University of North Florida).

In his expert report, after citing to, *inter alia*, (1) an article in Police Chief Magazine entitled "The Role of Psychological Fitness-for-Duty Evaluations in Law Enforcement," (2) the

---

Moreover, the case law is clear that in order to survive a motion for summary judgment, the plaintiff must offer evidence to create a genuine issue of fact on all the elements of its claims. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) ("a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial. The moving party is entitled to judgment as a matter of law because the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she had the burden of proof.") (citation omitted). Regardless of the defendant raising the expert testimony argument, the Court in deciding the negligent supervision claim as a matter of law had to consider whether expert testimony—an element of the claim itself—was needed for the claim to survive summary judgment.

Psychological Fitness-for-Duty Guideline, ratified by the International Association of Chiefs of Police, Psychological Services Section, and (3) an MPD General Order regarding Physical Examinations, s*ee* Longo Report at 28−29, ECF No. 77-1, Mr. Longo concluded that "what appears to have led to Officer Eagan's return to full duty, involved far less than what would have otherwise been required for a full Fitness-for-Duty evaluation." *See id.* ¶ 147. The District does not contest his findings for purposes of this motion.

In light of the expert testimony proffered and the lack of a challenge from the District, the Court now turns to whether the plaintiff has satisfied the other elements of the negligent supervision claim.[5] To succeed on a claim of negligent supervision, the plaintiff must prove "'that the employer breached a duty to the plaintiff to use reasonable care in the supervision or retention of an employee which proximately caused harm to plaintiff.'" *James v. District of Columbia*, 869 F. Supp. 2d 119, 121 (D.D.C. 2012) (quoting *Phelan v. City of Mount Rainier*, 805 A.2d 930, 940 (D.C. 2002)). The expert testimony proffered by the plaintiff, if accepted, establishes the relevant standard of care—creating a genuine issue of material fact as to whether the District fell below that standard in reinstating Officer Eagan's police powers based on only a psychological evaluation.

However, the failure to proffer expert testimony was not the Court's only reason for entering judgment for the District on the negligent supervision claim. Because the Court had

---

[5] The parties again rehash their arguments regarding whether the negligent supervision claim is duplicative of the respondeat superior claims. Case law is clear that respondeat superior liability is distinct from negligent supervision liability. *See James v. District of Columbia*, 869 F. Supp. 2d 119, 121 (D.D.C. 2012) ("Unlike the doctrine of respondeat superior—a legal construct which allows a plaintiff to hold employers vicariously liable for acts committed by their employees—the tort of negligent supervision allows a plaintiff to hold employers directly liable for their failure to properly supervise their personnel.") (citing *Griffin v. Acacia Life Ins. Co.*, 925 A.2d 564, 575 (D.C. 2007)).

already determined that Officer Eagan had acted in an objectively reasonable fashion in the context of the Fourth Amendment claim against him, *see* Mem. Op. at 24, the Court also noted that even if expert testimony had been proffered, it seriously doubted whether proximate causation could be established, because any officer confronted with the facts before Officer Eagan would have acted the same way, and although Officer Eagan might not have shot Mr. Flythe that day, another reasonable officer on the scene likely would have. *See* Mem. Op. at 29 n.13. It was therefore, not reasonably foreseeable as a matter of law that the District's negligent supervision of Officer Eagan proximately caused Mr. Flythe's death—the District's failure to properly supervise Officer Eagan was not a substantial factor in bringing about Mr. Flythe's death because any officer in Officer Eagan's position would likely have shot Mr. Flythe in the circumstances. Although the prior ruling was couched in terms of serious doubt such a claim could survive, the Court now expressly holds that the claim fails for that reason.

Therefore, even after considering the plaintiff's newly-proffered expert testimony, the Court finds that judgment must still be entered for the District on this claim because the plaintiff cannot establish proximate causation as a matter of law.

### C. Excessive Force claim

#### 1. Officer Vazquez

The plaintiff next takes issue with the Court's finding that Mr. Flythe had not been seized for purposes of his encounter with Officer Vazquez. The Court found that because Mr. Flythe never submitted to Officer Vazquez's show of authority, but instead, fled, that he had not been seized for purposes of the Fourth Amendment.[6] *See* Mem. Op. at 19–20. The Court also noted

---

[6] The plaintiff takes issue with the Court's treatment of the first part of the *Mendenhall* test. *See* Pl.'s Mot. Alter or Amend 6. ("Apparently the Court does not believe that

8

that even if it found that Mr. Flythe had momentarily submitted to Officer Vazquez's show of authority, it would not have changed the outcome in this case, because, as a matter of law, Mr. Flythe was still able to completely evade submission. *Id.* at 19.

In its motion to alter or amend, the plaintiff, for the first time, and without citation to anything on the record, argues that Mr. Flythe could not have felt free to leave because when Officer Vazquez initially stopped Mr. Flythe, he did so with his weapon drawn the entire time, and made "police commands . . . delivered at gunpoint" telling Mr. Flythe to tie his dog up to the fence. *See* Pl.'s Mot. Alter or Amend 9, ECF No. 77. The plaintiff also argues, again without citation to anything in the record, that Mr. Flythe was "ordered to tie a dog to a fence," "ordered to show his hands," "ordered to walk over to a police car with his hands raised and palms showing . . . all while a policeman's service weapon is pointed at him." *See id.* at 8. The plaintiff's arguments mischaracterize both the facts on the record, and the law in this case. First, there is no evidence on the record, in any of the eyewitnesses' testimonies—and the plaintiff points to no facts, *see id.*, indicating that Officer Vazquez's weapon was pointed at Mr. Flythe as he approached the police car, after tying his dog up to the fence. And moreover, even if the

---

black men living in predominately black neighborhoods fit the 'reasonable person' criteria, because there is not a black man alive who would have felt 'free to leave' under such circumstances."). However, whether Mr. Flythe felt "free-to-leave" is only part of the seizure analysis—as the Supreme Court stated in *California v. Hodari D.*, the *Mendenhall* free-to-leave test "states a *necessary*, but not a *sufficient*, condition for seizure—or, more precisely, for seizure effected through a 'show of authority.'" 499 U.S. 621, 628 (1991) (quoting *United States v. Mendenhall*, 446 U.S. 544, 554 (1980)). And as the Court explained in *Florida v. Royer*, "law enforcement officers do not violate the Fourth Amendment by merely approaching an individual on the street or in another public place, by asking him if he is willing to answer some questions, by putting questions to him if the person is willing to listen . . . ." 460 U.S. 491, 497 (1983). The second part of the seizure test is whether the person submitted to the show of authority, which did not happen here—at least not according to the law in this Circuit as of the Court's November 8, 2013 decision. Whether that changes in light of *United States v. Brodie* will be decided pending supplemental briefing, as set forth above.

Court were to assume that there were, and that Mr. Flythe approached the car in momentary submission to Officer Vazquez pointing a gun at him, it would not change the outcome because Mr. Flythe ultimately fled and escaped—and never submitted to Officer Vazquez's show of authority. Because he never submitted, there was no seizure. *See, e.g.*, *Reeves v. Churchich*, 484 F.3d 1244, 1252–53 (10th Cir. 2007) (holding that even though police officers "point[ed] their weapons and ma[de] verbal commands," because one plaintiff ran away and the other pushed the officer's gun out of her face, they never submitted to the assertions of authority, and therefore, there was no seizure); *United States v. Hernandez*, 27 F.3d 1403, 1407 (9th Cir. 1994) (finding no seizure where an officer drew his gun at a suspect who subsequently fled, and explaining that "a seizure does not occur if an officer applies physical force in an attempt to detain a suspect but such force is ineffective"); *Cole v. Bone*, 993 F.2d 1328, 1332–33 (8th Cir. 1993) (holding that no seizure occurred where shots were fired at a truck but did not hit the suspect because they "failed to produce a stop").

On February 18, 2014, the D.C. Circuit decided *United States v. Brodie*, No. 11-3029, 2014 WL 593264, at *2 (D.C. Cir. Feb. 18, 2014), in which it held that "the short duration of [the defendant's] submission means only that the seizure was brief, not that no seizure occurred." In light of that holding, the Court directed the parties to file supplemental briefing to determine whether it affects this Court's holding as to the excessive force claim against Officer Vazquez only. *See* Minute Order dated February 20, 2014. Because those briefs have not yet been filed, the Court will defer deciding this issue pending the supplemental pleading.

### 2. Officer Eagan

The plaintiff also takes issue with the Court's conclusion as to Officer Eagan's use of excessive force. A court may deny a motion for reconsideration that "raises . . . arguments for

reconsideration the court has . . . already rejected on the merits." *Henok*, 947 F. Supp. 2d at 10.

The plaintiff raises the same arguments here that the Court has already rejected, and therefore justice does not require the Court to alter or amend its judgment on this issue either.[7]

### D. Assault and Battery

Finally, the plaintiff takes issue with the Court's conclusion regarding Officer Eagan's liability for battery. The plaintiff argues—for the first time *in its reply* to the defendant's opposition to motion to alter or amend, and without citation to the record—that the shell casings found on the floor near Mr. Flythe's body corroborate the eyewitness testimony that suggests that Officer Eagan fired shots at an unarmed Mr. Flythe as he chased him down the street. *See* Pl.'s Reply 13, ECF No. 81 ("Defendant Eagan fired his weapon five (5) times by all accounts. He struck Mr. Flythe twice, he missed him three (3) times, and the fact that the last two (2) bullets struck him in the front of his body, after he turned around to face defendant Eagan,

---

[7] The plaintiff takes issue with the Court's treatment of Officer Eagan's drug use. At the summary judgment stage, the plaintiff argued zealously that Officer Eagan's drug use did not entitle him to qualified immunity. *See* Pl.'s Opp'n Mot. Summ. J. 18–19, ECF No. 67. The plaintiff had the opportunity to proffer all the evidence it had regarding those arguments. For the first time, now on reconsideration, the plaintiff proffers evidence challenging the defendant's testimony—evidence it already had but chose not to proffer at the summary judgment stage. That evidence does not change the Court's legal conclusion because Officer Eagan's subjective state of mind does not change the fact that he acted as an objectively reasonable officer would have in the same situation. Even if that evidence did change the Court's conclusion, though, the Court need not consider it. *See, e.g.*, *United Mine Workers of America 1974 Pension Trust v. Pittston Co.*, 793 F. Supp. 339, 342–343 (D.D.C. 1992) (explaining that on a motion for reconsideration, the court need not consider evidence that the plaintiff had and could have submitted in its opposition to motion for summary judgment, but chose not to). In addition, one of the grounds for reconsideration is the "discovery of new evidence not previously available." *See Johnson-Parks*, 806 F. Supp. 2d at 269 (citing *Zeigler v. Potter*, 555 F. Supp. 2d 126, 129 (D.D.C. 2011)). The evidence proffered by the plaintiff here was previously available, but not submitted. As such, justice does not require that the Court's judgment be reconsidered on that ground.

supposedly somehow supports a theory that defendant Eagan was 'privileged' to shoot Mr. Flythe.").

The Court noted in its Memorandum Opinion that the "plaintiff's eyewitness testimonies from Mr. Hundal, Officer Vazquez, and Ms. Edmonds *could* suggest, when viewed in the light most favorable to the plaintiff, that Mr. Flythe was running from Officer Eagan when he was shot." *See* Mem. Op. at 34 n.17. However, those facts did not, and do not create a genuine *issue* of material fact because the only conclusive evidence of the shooting blatantly refutes that testimony. This is not a situation where there are two conflicting set of facts that could both equally be true. This is a situation where the plaintiff argues that Officer Eagan shot Mr. Flythe from behind, and the autopsy report shows definitively that he was shot from the front. And moreover, the five shell casings that were missing from Officer Eagan's gun were all found in front of the same house on the same block where Mr. Flythe's body was found and where he was shot. *See* Crime Scene Evidence Report at 2, ECF No. 68-2. As Officer Eagan argued on reply at the summary judgment stage—if he had been "firing while he was running down the street, there would have been a trail of shell casings down the street . . . ." Eagan Reply 8, ECF No. 68. Even accepting as true the eyewitness testimony that suggested Officer Eagan fired shots as he chased Mr. Flythe, the only undisputed, conclusive evidence on the record—the autopsy report and crime scene report describing the location of the shell casings "blatantly contradicts" that testimony, and corroborates Officer Eagan's testimony that he shot Mr. Flythe in self-defense. *See Scott v. Harris*, 550 U.S. 372, 380 (2007) ("When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment."); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249–250 (1986) ("If the

evidence is merely colorable, or is not significantly probative, summary judgment may be granted [for the movant]." (citation omitted)); *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) ("Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial (internal quotation marks and citations omitted)). The plaintiff proffered no evidence to support its contention that Officer Eagan shot Mr. Flythe as he chased him down the street. Rather, the Court sifted through the evidence looking for a genuine issue of material fact and—relying largely on the defendant's exhibits because the plaintiff put forth no evidence—could find none. As such, the Court denies the plaintiff's motion to alter or amend its judgment on this claim.[8]

## IV. CONCLUSION

For the foregoing reasons, it is hereby **ORDERED** that the plaintiff's motion to alter or amend the judgment is **DENIED**.

**SO ORDERED.**


Dated: February 25, 2014                                    RUDOLPH CONTRERAS
                                                            United States District Judge

---

[8] Although the District did not move for reconsideration, it mentions that it does not think it should be liable for battery, given that judgment was entered for Officer Eagan on the battery claim. The Court finds the District's position unpersuasive because the District is responsible for the acts of both of its employees. The District's liability in this case cannot be viewed in a vacuum, with the Court examining each officer's liability separately and detached from the other. The genuine issue of material fact in the context of Officer Vazquez's encounter with Mr. Flythe carries forward to create one with respect to Officer Eagan—and again, only for purposes of the District, who is liable for *both* officers. The Court found that Officer Eagan acted reasonably in his personal capacity, regardless of whether Mr. Flythe had a knife, given his reliance on Officer Vazquez's radio call. But if Officer Vazquez's radio call was false, and there is a question of fact whether it was, the District may be liable for the consequences of any wrongdoing by Officer Vazquez, Officer Eagan's personal good faith notwithstanding.