# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | | | |
|---|---|---|---|
| BETTY S. FLYTHE, | : | | |
| | : | | |
| Plaintiff, | : | Civil Action No.: | 10-2021 (RC) |
| | : | | |
| v. | : | Re Document No.: | 88, 89 |
| | : | | |
| DISTRICT OF COLUMBIA, *et al.*, | : | | |
| | : | | |
| Defendants. | : | | |

## **MEMORANDUM OPINION & ORDER AMENDING JUDGMENT**

## I.  INTRODUCTION & BACKGROUND

On December 26, 2009, Tremayne G. Flythe was fatally shot by an officer of the District of Columbia's Metropolitan Police Department ("MPD"). Mr. Flythe's mother, Betty S. Flythe, brought this action in her personal capacity and on behalf of the estate of Mr. Flythe against the District of Columbia ("the District") and the two officers directly involved in the shooting, Officers Travis Eagan and Angel Vazquez. The plaintiff brought 42 U.S.C. § 1983 claims against the defendant officers, as well as common law claims for assault and battery. In addition, the plaintiff asserted assault and battery, and negligent hiring, training, and supervision claims against the District, as employer of the individual officers. The defendants moved for summary judgment on all claims, and on November 8, 2013, the Court granted that motion in part and denied it in part. *See* ECF Nos. 71 & 72.

In that November 8, 2013 Memorandum Opinion & Order, the Court found that Mr. Flythe had not been seized by Officer Vazquez for purposes of his excessive force claim against him, and that he had been seized by Officer Eagan, but that Officer Eagan was entitled to qualified immunity because he was objectively reasonable in using deadly force against Mr.

1

Flythe. The Court also found that because the plaintiff failed to proffer expert testimony, her negligent supervision claim against the District failed.

The Court found, however, that based on the eyewitness testimony proffered by the plaintiff, there was a genuine issue of material fact as to whether Mr. Flythe was armed during his encounter with Officer Vazquez;[1] as such, summary judgment was not appropriate on the plaintiff's assault claim against him. The Court also found that because there was a genuine issue of material fact as to Officer Vazquez's recitation of events, that genuine issue carried forward to Officer Eagan's encounter with Mr. Flythe, and the District, as *both officers'* employer, could still be liable for assault and battery under a theory of respondeat superior. As such, the claims that survived summary judgment were the assault claim against Officer Vazquez, and the assault and battery claim against the District.

The plaintiff then filed a motion to alter or amend the Court's judgment, asking this Court to alter or amend its judgment with respect to (1) the negligent supervision claim,[2] (2) the unlawful seizure claim as to Officer Vazquez, (3) the excessive force claim as to Officer Eagan, and (4) the assault and battery claim as to Officer Eagan. *See* ECF Nos. 76 & 77. By order dated February 25, 2014, the Court denied that motion, but deferred ruling on the plaintiff's unlawful seizure claim against Officer Vazquez, pending supplemental briefing by the parties in light of the D.C. Circuit's opinion in *United States v. Brodie*, No. 11-3029, 2014 WL 593264, at *2 (D.C. Cir. Feb. 18, 2014). *See* ECF No. 86. The parties have filed supplemental briefs, and upon consideration of those briefs and *United States v. Brodie*, the Court finds that there is a

---

[1] The Court entered judgment for Officer Eagan on the battery claim, because the plaintiff could not proffer facts that put *his* recitation of events into material dispute.
[2] In the Memorandum Opinion & Order denying the plaintiff's motion to alter or amend the judgment, the Court held that even in light of newly-proffered expert testimony, the plaintiff's negligent supervision claim still failed as a matter of law because the plaintiff could not establish proximate cause. *See* Mem. Op. & Order 8, ECF No. 86.

genuine issue of material fact as to whether Mr. Flythe was unlawfully seized by Officer Vazquez, and amends its entry of judgment dated November 8, 2013 accordingly.

## II. LEGAL STANDARD

Under Federal Rule of Civil Procedure 54(b), "any order or other decision . . . that adjudicates fewer than all the claims or the rights and liabilities" of the parties that does not end the case "may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities." FED. R. CIV. P. 54(b). "The Court has broad discretion to hear a motion for reconsideration brought under Rule 54(b)." *Isse v. Am. Univ.*, 544 F. Supp. 2d 25, 29 (D.D.C. 2008). Though different courts "apply a variety of different standards when confronted with a motion for reconsideration," *see Cobell v. Norton*, 355 F. Supp. 2d 531, 539 (D.D.C. 2005), this jurisdiction has established that reconsideration is appropriate "as justice requires." *Id.* at 540; *see also Capitol Sprinkler Inspection, Inc. v. Guest Services, Inc.*, 630 F.3d 217, 227 (D.C. Cir. 2011) (explaining that Rule 54(b) recognizes a district court's power to reconsider an interlocutory order "as justice requires" (citation omitted)). "Considerations a court may take into account under the 'as justice requires' standard include whether the court 'patently' misunderstood the parties, made a decision beyond the adversarial issues presented, made an error in failing to consider controlling decisions or data, or whether a controlling or significant change in the law has occurred." *Williams v. Johanns*, 555 F. Supp. 2d 162, 164 (D.D.C. 2008) (citing *Singh v. George Washington Univ.*, 383 F. Supp. 2d 99, 101 (D.D.C. 2005)). In general, "a court will grant a motion for reconsideration of an interlocutory order only when the movant demonstrates: (1) an intervening change in the law; (2) the discovery of new evidence not previously available; or (3) a clear error in the first order." *Stewart v. Panetta*, 826 F. Supp. 2d 176, 177 (D.D.C. 2011) (quoting *Zeigler v. Potter*, 555 F. Supp. 2d 126, 129 (D.D.C. 2008)).

### III. ANALYSIS

In its motion to alter or amend the judgment, the plaintiff took issue with the Court's finding that Mr. Flythe had not been seized for purposes of his encounter with Officer Vazquez. The plaintiff originally brought this claim under 42 U.S.C. § 1983, alleging that the officer defendants employed excessive force against Mr. Flythe, in violation of his Fourth Amendment rights. In response, the defendants argued that they were entitled to qualified immunity because they exercised a reasonable amount of force in their encounters with Mr. Flythe. The Supreme Court has explained that there are two inquiries involved in a qualified immunity analysis: First, "taken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?" *Saucier v. Katz*, 533 U.S. 194, 201 (2001). If there is no constitutional right violation, "there is no necessity for further inquiries concerning qualified immunity." *Id.* But if there is a constitutional violation, the court must ask the second question, which is: was the right violated "clearly established?" *Id.* The "dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Id.* at 202.[3]

The first question the Court asked, then, is whether Officer Vazquez violated Mr. Flythe's Fourth Amendment rights. The Court first considered whether Mr. Flythe had been "seized" under the Fourth Amendment, explaining that if there was no seizure, there could be no claim for excessive force. *See* Mem. Op. at 11, ECF No. 72 (citing *Brooks v. Gaenzle*, 614 F.3d 1213, 1219 (10th Cir. 2010) ("To state a claim of excessive force under the Fourth Amendment, a plaintiff must show both that a seizure occurred and that the seizure was unreasonable.") (citations omitted)). The Court began this analysis by discussing the legal standard for a seizure

---

[3] The Supreme Court has since made clear that the sequence of the two steps is discretionary, not mandatory. *See Pearson v. Callahan*, 555 U.S. 223, 236 (2009).

under *Terry v. Ohio*, 329 U.S. 1 (1968), *United States v. Mendenhall*, 446 U.S. 544 (1980), and *California v. Hodari D.*, 499 U.S. 621 (1991). In *Hodari D.*, the Court explained that a seizure "requires *either* physical force *or*, where that is absent, *submission* to the assertion of authority." 499 U.S. at 626 (emphasis in original). Under these cases, there are essentially two ways to be seized: either (1) by physical force, or (2) if there is no physical force, by a show of authority to which the person submits. *See Brendlin v. California*, 551 U.S. 249, 254 (2007) ("A police officer may make a seizure by a show of authority and without the use of physical force, but there is no seizure without actual submission . . . ."). In cases such as this one where no physical force is applied, a court must determine (1) whether the officer "used a show of authority to seize" the person, and (2) whether the person "submitted to the assertion of authority." *United States v. Wood*, 981 F.2d 536, 539 (D.C. Cir. 1982).

In light of the foregoing precedent, the Court noted that Officer Vazquez's initial exchange with Mr. Flythe, when he asked Mr. Flythe to tie up his dog, did not constitute a show of authority, but rather was an inoffensive interaction between the parties. *See* Mem. Op. at 15–16 (quoting *Florida v. Royer*, 460 U.S. 491, 497 (1983) ("law enforcement officers do not violate the Fourth Amendment by merely approaching an individual on the street or in another public place, by asking him if he is willing to answer some questions, by putting questions to him if the person is willing to listen . . . .")).

However, once Officer Vazquez displayed his weapon, that action constituted a show of authority and the question at that point became whether Mr. Flythe submitted to that show of authority. *See* Mem. Op. at 18–19. The Court's "genuine issue of material fact" analysis hinged on the fact that Mr. Flythe ultimately fled, and therefore never submitted to Officer Vazquez's show of authority. *See* Mem. Op. at 17–20. The Court noted that any dispute of fact as to

5

whether Mr. Flythe's hands were up at any point, in submission to Officer Vazquez's show of authority, was immaterial because even if Mr. Flythe momentarily submitted, that was not enough to constitute a seizure as a matter of law. *See* Mem. Op. at 19 (citing, *inter alia*, *United States v. Washington*, 12 F.3d 1128, 1132 (D.C. Cir. 1994); *Brooks v. City of Aurora, Ill.*, 653 F.3d 478, 484–85 (7th Cir. 2011); *United States v. Smith*, 633 F.3d 889, 898 (9th Cir. 2011), for the proposition that momentary submission to a show of authority does not render an encounter a seizure for purposes of the Fourth Amendment).

Those opinions have been called into question in light of *Brodie—*a "controlling or significant change in the law" and as such, the Court's opinion warrants reconsideration. *See Williams*, 555 F. Supp. 2d at 164. The facts of *Brodie* are brief but straightforward. Two police officers were parked outside the home of a man named Jerome Earles, a murder suspect in police custody. 2014 WL 593264, at *1. They saw Brodie leave Mr. Earles's house, and he "looked . . . hinked up," and walked toward the corner where the officers were parked. *Id.* The court noted that the officers "presumably suspect[ed] he might be in cahoots with Earles," having just come from Earles's house. *Id.* The officers pulled their car up next to Brodie, one of the officers got out of the car, and told Brodie "to put his hands on a nearby car." *Id.* Brodie complied with the officers' instructions, but "a few seconds later . . . Brodie took off. As the officers chased him he discarded three guns and finally dropped to the ground when an officer threatened to tase him." *Id.* The government argued that "Brodie's putting his hands on the car for a few seconds did not amount to submission to the police, so no seizure occurred." *Id.* The Court rejected that argument, explaining that "[w]e can see no basis for classifying Brodie's action—putting his hands on the car when told to do so by the police—as anything other than full compliance with the officer's request." *Id.* at *2. The Court went on to explain that "the short duration of

6

Brodie's submission means only that the seizure was brief, not that no seizure occurred. Later acts of noncompliance do not negate a defendant's initial submission, so long as it was authentic." *Id.* The Court reads this case as holding that momentary submission is enough to satisfy the second prong of the *Hodari D.*/*Wood* seizure test, and therefore enough to establish a seizure for purposes of the Fourth Amendment.

In this case, there is a genuine issue of fact as to whether Mr. Flythe momentarily submitted to Officer Vazquez's show of authority, that is *now material* because it affects the outcome as a matter of law in light of *Brodie*. Though Officer Vazquez testified that he only displayed his weapon in response to Mr. Flythe pulling out a knife and threatening him with it, *see* Vazquez Dep. at 22:2–5, 46:3–4, ECF No. 63-4, several eyewitnesses testified that they never saw Mr. Flythe with a weapon, and that they saw Officer Vazquez pointing a gun[4] at Mr. Flythe, while Mr. Flythe's hands were up—*i.e.*, in momentary submission to Officer Vazquez's show of authority. *See* McCotter Dep. at 11, 21, ECF No. 66-8; Shapiro Dep. at 32–34, ECF No. 66-6; Willard Dep. at 11–12, ECF No. 67-7; Poole Dep. at 6, ECF No. 67-9. The fact that Mr. Flythe subsequently and ultimately fled is no longer dispositive because, in light of *Brodie*, a momentary submission is enough to constitute a seizure.

---

[4] There is also a factual issue as to when, exactly, Officer Vazquez initially displayed his weapon. Officer Vazquez stated that he did not point his weapon at Mr. Flythe while he was tying up his dog to the gate, *see* Vazquez Dep. at 21:15–17, and that it was not until Mr. Flythe threatened him with a knife that he pulled out his gun. *See* Vazquez Dep. at 46:1–4. However, eyewitness testimony suggests, when viewed in the light most favorable to the plaintiff, that Officer Vazquez may have displayed his gun earlier in the exchange, while Mr. Flythe was tying up his dog to the gate. *See* McCotter Dep. at 11–13 (explaining that after Mr. Flythe tied up his dog, he approached the vehicle with his hands up, and the officer "jumped out of the car" and then the eyewitness heard gunshots); Willard Dep. at 7:16–18 ("His dog was on the gate and he had his hands in the air."). It is possible that Mr. Flythe's hands were up in those moments in response to a show of authority. As set forth above, because of this, and other *now material* factual issues, summary judgment is not appropriate.

Moreover, this factual issue also pervades the next part of the analysis—whether the amount of force used during the seizure—if there was one, was reasonable. The Supreme Court has stated that "all claims that law enforcement officers have used excessive force—deadly or not—in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed under the Fourth Amendment and its 'reasonableness' standard." *Graham v. Connor*, 490 U.S. 386, 395 (1989); *accord Wardlaw v. Pickett*, 1 F.3d 1297, 1303 (D.C. Cir. 1993). With respect to the reasonableness of the use of deadly force, the Supreme Court has clarified that, "where the suspect poses no immediate threat to the officer and no threat to others, the harm resulting from failing to apprehend him does not justify the use of deadly force to do so." *Tennessee v. Garner*, 471 U.S. 1, 11 (1985). However, "where the officer has probable cause to believe that the suspect poses a threat of serious physical harm, either to the officer or to others, it is not constitutionally unreasonable to prevent escape by using deadly force." *Id.* "Thus, *if the suspect threatens the officer with a weapon* or there is probable cause to believe that he has committed a crime involving the infliction or threatened infliction of serious physical harm, *deadly force may be used if necessary to prevent escape*, and if, where feasible, some warning had been given." *Id.* at 11–12 (emphasis added).

Officer Vazquez testified that Mr. Flythe had a knife and that he tried to "stab" him with the knife, which, if true, would make his use of deadly force against Mr. Flythe reasonable. However, five separate eyewitnesses testified that they all saw Mr. Flythe "with his hands up," and with no weapon throughout the encounter. *See, e.g.*, McCotter Dep. at 33:16–22, Smith Dep. at 5:4–17, Willard Dep. at 7:17–18. One eyewitness even stated that she saw a police officer chasing an unarmed man down the street. *See* Shapiro Dep. at 38:9–12, 39:1–2. Thus, there is a genuine issue of material fact as to whether Mr. Flythe did, in fact, pose a threat of

serious physical harm to Officer Vazquez, as a reasonable fact-finder could conclude based on the evidence proffered by the plaintiff that Mr. Flythe carried no weapon and did not otherwise attack Officer Vazquez during their encounter.

Thus, because there is a genuine dispute of material fact as to whether Mr. Flythe did momentarily submit, and thus whether Mr. Flythe was ever seized, and also a genuine dispute of material fact as to whether Officer Vazquez used excessive force if he did, in fact, seize Mr. Flythe, entry of summary judgment on the excessive force claim for Officer Vazquez is inappropriate. Moreover, when viewed in the light most favorable to the plaintiff, the facts regarding the constitutional violation prong of the qualified immunity analysis suggest that Officer Vazquez's conduct violated clearly established law at the time—because it would have been clear to a reasonable officer that it was unlawful to use deadly force against an unarmed individual with his hands in the air, who otherwise posed no threat to the officer or others. Thus, summary judgment on qualified immunity grounds for Officer Vazquez must be denied.

### IV.  CONCLUSION

For the foregoing reasons, the Court amends its interlocutory order dated November 8, 2013 in light of "an intervening change in the law." *Stewart*, 826 F. Supp. 2d at 177. Factual issues pervade the plaintiff's 42 U.S.C. § 1983 excessive force claim in light of *Brodie*, and as such, Officer Vazquez's motion for summary judgment on the excessive force claim must be denied.

**SO ORDERED.**

Dated: March 7, 2014                                                                                   RUDOLPH CONTRERAS
                                                                                                                        United States District Judge